### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF NEW YORK

---

**FOUR DIRECTIONS AIR, INC.,**
**SMITHAIR, INC., and RUSSELL W. APPLETON,**

**Plaintiffs,**

    **-v-**
                                         **COMPLAINT**

**UNITED STATES OF AMERICA, CITY OF**
**SYRACUSE and THE SENSIS CORPORATION,**

**Defendants.**

---

Plaintiffs Four Directions Air, Inc., SmithAir, Inc., and Russell W. Appleton, for their Complaint against defendants United States, City of Syracuse, and Sensis Corporation allege as follows:

### INTRODUCTION

1.     This is an action seeking to recover compensation for property damage to a 1984 Dassault Falcon 50 aircraft, FAA registration number N544RA, serial no. 144, and related losses and expenses that plaintiffs incurred as a direct and proximate result of negligent acts and omissions of the United States, the City of Syracuse, Sensis Corporation, and their respective agents and employees on or about December 8, 2004 at the Syracuse Hancock International Airport.

## JURISDICTION

2.      This Court has original jurisdiction over plaintiffs' claims against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C 2674, *et seq*, pursuant to 28 U.S.C. § 1346(b).

3.      Four Directions Air, Inc., SmithAir, Inc., and Russell W. Appleton filed administrative claims (Standard Form 95) with the Federal Aviation Administration ("FAA"), an agency of the United States on June 7, 2005, in compliance with the requirements of the FTCA, 28 U.S.C. § 2675. (Copies of the claims are attached as exhibit A). The FAA has not resolved those claims within six months, and therefore is deemed to have denied the claims for purposes of 28 U.S.C. § 2675(a).

4.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) to adjudicate plaintiffs' claims against the City of Syracuse and Sensis Corporation, since they arise from a common nucleus of facts and are "so related to plaintiffs' claims in the action [against the United States] that they form part of the same case or controversy under Article III of the United States Constitution."

5.      Plaintiffs, Four Directions Air, Inc., SmithAir, Inc, and Russell Appleton have each complied with New York General Municipal Law §§ 50-e and 50-i by serving Notices of their Negligence Claims against the City of Syracuse on March 7, 2005. (Copies of the Notices are attached as exhibit B.).

## VENUE

6.      Venue is proper under 28 U.S.C. § 1402(b) in that the acts and omissions on which this action is premised took place in the Northern District of New York.

## IDENTIFICATION OF THE PARTIES

7.      Plaintiff Four Directions Air, Inc. ("Four Directions") is a corporation duly

formed and existing under the laws of the Oneida Indian Nation, with its principal place of

business at 223 Genesee Street, Oneida, New York.  At all times relevant to this action, Four

Directions owned the  Falcon 50 jet aircraft, FAA Registration the aircraft, serial no. 144, ("the

aircraft"), that was damaged while taxiing at the Syracuse Hancock International Airport

("Syracuse Airport") on December 8, 2004.

8.      Plaintiff SmithAir, Inc. ("SmithAir") is a corporation duly formed and existing

under the laws of the State of Georgia, with its principal place of business at 510 Speedway

Boulevard, Hampton, Georgia.  At all times relevant to this action, SmithAir  managed,

maintained, and operated the aircraft for or on behalf of Four Directions and provided aircraft

charter services to third parties under an Aircraft Management Agreement with Four Directions,

pursuant to Part 135 of the Federal Aviation Regulations. ("Regulations").

9.      Plaintiff Russell W. Appleton ("Appleton") is an experienced professional pilot,

with more than thirty (30) years of flying experience, Air Transport Pilot rating and type

certificated to fly nine different aircraft models.  Appleton was employed by SmithAir and was

the pilot in command of the aircraft at the time of the December 8, 2004 incident which is the

subject of this action.  Appleton is a resident of the State of Georgia, at 54 Counts Brown Lane,

Milner, Georgia.

10.     The United States is designated under the FTCA as the entity to be named as

defendant for claims for money damages based upon the negligent conduct of employees of

agencies of the United States.  The Federal Aviation Administration ("FAA") is an agency of the

United States that has plenary jurisdiction over all aspects of commercial and private aviation in the United States. The FAA certifies all airports in the United States that have scheduled airline service and regulates airport policies, procedures, and operations in accordance with applicable Regulations, 14 C.F.R. 139.1 *et. seq*. The FAA controls and directs aircraft traffic seeking to land at or takeoff from the Syracuse Airport, and it controls relevant ground operations at the Syracuse Operations.

11.     Defendant City of Syracuse ("the City") is a municipal corporation within the County of Onondaga, New York. The City owns and operates the Syracuse Airport and is the holder of the "Airport Operating Certificate" ("AOC") issued by the FAA for the Syracuse Airport.

12.     Defendant Sensis Corporation ("Sensis") is a corporation established and operating under the laws of the State of New York with its principal place of business at 5793 Widewaters Parkway, DeWitt, New York. Sensis develops, manufactures, and installs Airport Surface Detection Equipment ("ASDE"). At all relevant times, Sensis was operating and testing components of the ASDE-X at the Syracuse Airport under a contract with the FAA and a lease agreement with the City.

## FACTS

13.     The Syracuse Airport is certified by the FAA as a "Class I airport".

14.     As the certificate holder for the Syracuse Airport, the City is responsible for ensuring compliance with the applicable Regulations (14 C.F.R., Part 139), and with all provisions of the airport's FAA approved Airport Certification Manual ("ACM").

15.     The Regulations expressly required that the City provide training in the procedures not only to its own Airport employees, but to employees of tenants and contractors whose work requires access to the Airport, and that it maintain records of all such training.

16.     The Regulations and ACM required that the City limit access to aircraft "movement areas" (which are defined in the Regulations as runways, taxiways, and other areas of an airport used by arriving and departing aircraft) to those pedestrians and ground vehicles necessary for the operation of the airport.

17.     At all times relevant to this action, the FAA operated an Air Traffic Control Tower ("Tower") at the Syracuse Airport which provided control of arriving and departing aircraft within the airport's designated airspace and while aircraft are operating on the ground.

18.     The Regulations make clear that when the Tower is operating, aircraft and pedestrians or ground vehicles in "moving areas" are under "positive control" of Tower personnel, who issue clearances and provide directions to avoid conflict between aircraft and ground traffic.

19.     Specifically, 14 C.F.R. §129.327 provides two methods for providing such control: (1) two-way radio communication between the Tower and each such person and ground vehicle; or (2) by an escort having two-way radio communications with the Tower accompanying any pedestrian or vehicle without such radio communications capability.

20.     At all relevant times, Sensis was performing contractual work for the FAA in connection with the development, production, installation and testing of a new model of ground surveillance radar system designated as Airport Surface Detection Equipment Model X ("ASDE-

X"). Syracuse Airport was selected to be the testing area for the new system to determine its suitability for inclusion in the National Airspace System.

21.     In order to facilitate this work, Sensis negotiated a lease agreement with the City, which provided space on the airport for Sensis to store its equipment and set up some components of the ASDE-X system.

22.     In order to test and calibrate the new system, Sensis moved "test targets" to various locations on the airport, often requiring that its employees transit or set up equipment in the aircraft "movement areas."

23.     On December 8, 2004, at approximately 8:00 p.m., Sensis and the City scheduled a testing session in which a target was set up on a taxiway designated as "Yankee" at or near its intersection with taxiway "Papa."

24.     Sensis and the City arranged to have City personnel meet the Sensis employees at the Syracuse Airport access gate in a City-owned vehicle, and to escort them initially to their leased facility to pick up equipment and then to the test location on taxiway Yankee.

25.     Since the Sensis vehicle was not equipped with the required radio equipment to proceed to the test location, City employees were required to obtain clearance from the Tower to escort Sensis to the test location.

26.     After arriving at the test location on taxiway Yankee, the City escort left the Sensis crew with their equipment, thus leaving the Tower with no means to communicate with the Sensis personnel or to advise them of any aircraft traffic in or near their location.

27.    The equipment which Sensis was testing included two ten foot steel poles mounted on bases with rolling wheels, one of which had been placed in the center of taxiway Yankee and one of which was located to the side of the taxiway.  Both poles were painted black.

28.    The test location on taxiway Yankee was not illuminated except for blue lights outlining the taxiway boundary, nor were there any other devices to warn anyone that there were people and equipment on the taxiway.

29.    The Sensis employees participating in the test were dressed in dark clothing and wore no reflective gear.

30.    Shortly before 8:00 p.m. on December 8, 2004, SmithAir pilots Appleton and Jacques deLannoy contacted the Tower to obtain clearance and departure instructions from Syracuse to Teterboro, New Jersey.

31.    In response to the SmithAir crew's request, FAA controllers at the Tower instructed the aircraft to taxi to runway 28 via taxiway Yankee.

32.    The FAA controllers at the Tower never advised SmithAir that there were men and equipment without lights on the Yankee taxiway that they had been directed to use to get to their departure runway.

33.    The Sensis personnel on taxiway Yankee saw the aircraft as it approached them on taxiway Yankee but made no effort to warn SmithAir of the hazard created by their unlighted equipment or to move it out of the path of the aircraft.

34.    By the time the SmithAir crew was able to see that there was something in the centerline of the taxiway, it was too late to avoid a collision with it.

35.     Notwithstanding immediate evasive maneuvers by Appleton, the aircraft struck the pole which had been erected in the center of the taxiway.

36.     The collision damaged the leading edge of the right wing of the aircraft.

37.     In addition to substantial damage to the leading edge of the right wing, the collision damaged the air intake of the right engine 3 engine (mounted in the tail assembly), and bent one of the pitot tubes.

38.     As a result of the collision, the aircraft returned to the terminal.

39.     The collision damaged the aircraft so that it was no longer airworthy and could not be flown in regular service until substantial repairs were completed.

40.     The following day, the FAA issued a "ferry" permit authorizing SmithAir to fly the aircraft to a repair facility.

## First Cause of Action:
## Negligence by the United States

41.     Plaintiffs repeat, re-allege, and incorporate by reference set forth in paragraphs "1" through "40" of this Complaint as if fully set forth herein.

42.     FAA controllers have a duty to provide aircraft crews with information regarding known hazards in the movement areas in which they are operating, especially where a hazard such as the presence of persons or equipment on a taxiway at night will not be apparent to crews.

43.     FAA had a duty to exercise reasonable care in controlling the movement of aircraft at the Syracuse Airport.

44.    The FAA controllers employed in the Tower who cleared the aircraft to Yankee knew or should have known that personnel and equipment were present on the taxiway conducting tests and other activities which posed a clear hazard to the aircraft.

45.    Having previously cleared the Sensis crew and their escort to a test location on taxiway Yankee, the FAA controllers' duties required that they ascertain the status of the Sensis test operation or, if they could not confirm their status, to route aircraft along different routes to their departure runways.

46.    The accident and damages alleged herein were directly and proximately caused by the FAA's negligent breach of its duties in failing to warn SmithAir about the presence of people and equipment on the dark taxiway or to provide an alternative clearance to the departure runway which would have avoided the hazard.

## Second Cause of Action:
## Negligence by the City of Syracuse

47.    Plaintiffs repeat, re-allege and incorporated by reference the foregoing Paragraphs "1" through "46" of this Complaint as if fully set forth herein.

48.    The City, as owner and operator of the Airport, was required to ensure compliance with the requirements of 14 C.F.R. 139.1, *et seq*. and to train all personnel in the policies, procedures, and requirements regarding access to aircraft "movement areas."

49.    The City breached that duty and violated the Regulations when, on December 8, 2004, a City employee left the Sensis test crew and equipment in the aircraft movement area on taxiway Yankee without two-way radio communication with the tower.

50.     The City further breached its duties and obligations to train all airport personnel in the requirements of the Regulations regarding pedestrian and ground vehicle access to movement areas.

51.     The City had a duty to exercise reasonable care over the maintenance and operations of the City Airport, and to avoid creating or contributing to conditions that could cause property damage.

52.     The accident and damages alleged herein were a direct and proximate result of result of the City's breach of its duties and violation of the Regulations.

### Third Cause of Action:
### Negligence by Sensis

53.     Plaintiffs repeat, re-allege, and incorporate by reference the foregoing Paragraphs "1" through "52" of this Complaint as though fully set forth herein.

54.     Sensis had a duty under the applicable Regulations, the ACM, and the common law to avoid creating an obvious and clear hazard to anyone using taxiway Yankee.

55.     Sensis breached this duty by allowing its employees to erect an unlit pole in the centerline of an aircraft taxiway at night knowing that, with the departure of the escort vehicle, they had no means of communicating with the Tower or monitoring the status of any approaching aircraft and knowing further that without lights, reflective clothing, or any other warning mechanism, collision with taxiing aircraft would be virtually inevitable.

56.     Sensis failed to make any effort to remove the hazard or warn the approaching aircraft of its presence.

57.    Even without the training the Sensis was required to receive prior to entering a "movement area," the employees knew or should have known of the clear hazard created by the pole.

58.    Sensis knew that the taxiway on which its personnel were working was in active use, having seen other aircraft using it immediately before the accident.

59.    Sensis' continuation of testing activity under these conditions constituted a breach of duty and a reckless disregard for the safety of persons and property on any aircraft using the taxiway.

60.    The accident and the damages alleged herein were directly and proximately caused by Sensis' negligent and reckless breach of the aforedescribed duties and misconduct.

## Damages

61.    As a direct and proximate result of the defendants' negligence and misconduct described in the foregoing paragraphs, Four Directions suffered the following damages:

(a)    the cost of repairing the damage to the aircraft and additional expenses associated with ferrying it to the repair facility in Michigan and repositioning it after the repairs had been completed;

(b)    loss of use of the aircraft during the period when it was out of service and undergoing repairs, which resulted in disruption of its business plans for the December, 2004 through January, 2005 period, inconvenience, and additional expenses associated with unplanned airline travel;

(c)    loss of net revenues to which it would have been entitled had the aircraft been available for third party charters; and

(d)    diminution in the market value of the aircraft.

62.    Four Directions seeks and is entitled to compensation for the damages described above which were solely the result of the defendants' negligence.

63.    As a direct and proximate result of the defendants' negligence described in the foregoing paragraphs, SmithAir suffered the following damages:

> (a)    Loss of net revenue to which it would have been entitled under its Aircraft Management Agreement with Four Directions resulting from third party charters, some of which had already been scheduled, and others as to which inquiries had been made, but which had not been definitively booked at the time of the incident;

> (b)    Expenses associated with procuring a replacement aircraft to complete one or more confirmed charters in which it was engaged at the time of the incident.

> (c)    Damage to its business reputation resulting from its inability to respond to customer inquiries and uncertainties regarding the future availability of a Falcon 50 aircraft for charter.

64.    SmithAir seeks and is entitled to compensation in an amount sufficient to offset its increased expenses, decreased revenues, and other losses described above which were solely the result of the defendants' misconduct.

65.    As a direct and proximate result of the defendants' negligence described in the foregoing paragraphs, and the reportable accident which was caused as a result, Mr. Appleton has suffered the following damages:

> (a)    loss of his previously accident-free record and damage to his professional reputation as a pilot, the reasonably foreseeable result of which is that Appleton will be disqualified from pursuing opportunities for employment and advancement in corporate aviation for which he was otherwise eligible and which he previously had planned on pursuing; and

> (b)    loss of future earnings and reduction in employment opportunities as a result of this accident.

66.    Appleton seeks and is entitled to compensation in an amount sufficient to offset the losses he has and will continue to incur.

**WHEREFORE**, plaintiffs Four Directions Air, Inc.; SmithAir, Inc., and Russell W. Appleton demand judgment in their favor against the defendants, jointly and severally, for an award of damages which will compensate each plaintiff for the damages suffered, as described herein, the costs and disbursements of the action, and such other relief as the interests of justice may require.

Dated:  March 3, 2006

Peter Carmen, Bar Roll No. 501504
*Attorney for Plaintiffs*
5218 Patrick Road
Verona, NY 13478
(315) 361-8687
pcarmen@oneida-nation.org

**EXHIBIT A**

# WILLIAM GRAY SCHAFFER
ATTORNEY AND COUNSELOR AT LAW

20 Cumberland Street
Yarmouth, Maine 04096

Tel: (207) 847-3107
Cell: (207) 831-6798
Fax: (207) 846-4743
graylaw@maine.rr.com

June 4, 2005

Assistant Chief Counsel, Litigation, AGC-400
Federal Aviation Administration
800 Independence Avenue, SW
Washington, D.C. 20591

      Re: FTCA claims,
         Date of Incident: December 8, 2004
         Location: Syracuse-Hancock International Airport

Dear Counsel:

I am enclosing herewith an original and one duplicate copy of Standard Form 95, asserting Claims for Damages by (1) Four Directions Air, Inc., (2) SmithAir Inc., and (3) Russell Appleton, individually.

Since the three claims arise from the same incident, as a matter of administrative convenience, I am submitting the three claims together.

I would appreciate it if you would return the duplicate copies to me, with your time-stamp of other notation indicating the date of receipt at the FAA. I have enclosed a self-addressed stamped envelope for that purpose.

Please do not hesitate to contact me if you need any additional iformtion.

Thank you for your cooperation.

Sincerely,

William Gray Schaffer

cc:    Office of Regional Counsel,   Burlington, MA (attn: Carol Dillon)

OF COUNSEL TO: CURTIS THAXTER STEVENS BRODER & MICOLEAU, LLC

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of the form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency: | 2. Name, Address of claimant and claimant's personal representative, if any. *(See instructions on reverse.) (Number, street, city, State and Zip Code)* |
|---|---|
| Federal Aviation Administration<br>Assitant Chief Counsel, Litigation AGC 400<br>800 Independence Avenue, SW<br>Washington, D.C. 20591 | Four Directions Air, Inc., as its interests may appear,<br>5218 Patrick Road<br>Verona, New York 3478 |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME *(A.M. or P.M.)* |
|---|---|---|---|---|
| ☐ MILITARY  ☒ CIVILIAN | N/A | N/A | December 8, 2004 | Approx. 8:00 pm. |

8. Basis of Claim *(State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof) (Use additional pages if necessary.)*

On December 8, 2004, at approximately 8:00 p.m. EST, one or more employees of the Federal Aviation Administration ("FAA") operating the ground control position in the FAA control tower at Syracuse-Hancock International Airport, acting in the scope of their employment, negligently directed claimant's Dassault Falcon 50 jet aircraft (FAA registration N544RA), to taxi via taxiway "Yankee" by failing to advise or otherwise warn the crew of N544RA that there was a contractor work crew conduting tests and other activities and unlighted equipment on that taxiway. The FAA personnel knew or should have known of the danger presented by the contractor work crew and equipment, and had a duty to warn the crew of N544RA thereof. They failed to do so, with the foreseeable result that the crew of the taxiing aircraft were unable to see the obstacles until it was too late to avoid a collision. Notwithstanding the crew's immediate corrective action, N544RA struck some of the equipment, thereby resulting in substantial damage to the aircraft and dimunition of its value. (Further informtion is provided on the attached pages.)

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT *(Number, street, city, State, and Zip Code)*

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. *(See instructions on reverse side.)*

The right wing of the aircraft collided with a board which the work crew had erected on the centerline of the taxiway, resulting in damage to right wing and engine cowling and left pitot tube. (Claimant's response is continued on attached additional pages.)

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

N/A

| 11. | | WITNESSES | |
|---|---|---|---|
| | NAME | | ADDRESS *(Number, street, city, State, and Zip Code)* |
| Jacques deLannoy (Pilot, N 544RA)<br>Russell Appleton (Pilot, N 544 RA)<br>Unknown employees of Sensis Corporation<br>Unknown employees of the City of Syracuse | | 510 Expressway Boulevard, Hampton, GA 30228<br>5697 Foxchase Lane, Culpepper, Virginia 22701<br>5793 Tidewaters Parkway, Dewitt, NY. 13214<br>Counsel, 300 City Hall, 233 E.Washington St., Syracuse NY 13202 | |

| 12. *(See instructions on reverse)* | | AMOUNT OF CLAIM *(In dollars)* | | |
|---|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL *(Failure to specify may cause forfeiture of your rights.)* |
| $2,000,000.00 | N/A | N/A | 2,000,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT *(See instructions on reverse side.)* | 13b. Phone number of signatory | 14. DATE OF CLAIM |
|---|---|---|
| Four Directions Air, Inc., by William Gray Schaffer, its attorney. | (207) 847-3107 | June 3, 2005 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant shall forfeit and pay to the United States the sum of $2,000 plus double the amount of damages sustained by the United States. *(See 31 U.S.C. 3729.)* | Fine of not more than $10,000 or imprisonment for not more than 5 years or both. *(See 18 U.S.C. 287, 1001.)* |

2005 JUN - 1   P 12: 0 1

LITIGATION DIVISION

RECEIVED

PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.

A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 38 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.

C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.

D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

INSTRUCTIONS
Complete all items - insert the word NONE where applicable

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

Any instructions or information necessary in the preparation of your claim will be furnished, upon request, by the office indicated in Item #1 on the reverse side. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplemental regulations also. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, *provided* evidence satisfactory to the Government is submitted with said claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file claim for both personal injury and property damage, claim for both must be shown in Item 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to completely execute this form or to supply the requested material within two years from the date the allegations accrued may render your claim "invalid". A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

Failure to specify a sum certain will result in invalid presentation of your claim and may result in forfeiture of your rights.

Public reporting burden for this collection of information is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden,

to  Director, Torts Branch
    Civil Division
    U.S. Department of Justice
    Washington, DC 20530

and to the
    Office of Management and Budget
    Paperwork Reduction Project (1105-0008)
    Washington, DC 20503

INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

| 15. Do you carry accident insurance? | [X] Yes, if yes, give name and address of insurance company *(Number, street, city, State, and Zip Code)* and policy number. | [ ] No |

Insured through Global Aerospace, Inc., 399 Peachtree Road, NE, Suite 1420, Atlanta, Georgia 30326. Polciy No. FHL 12116

| 16. Have you filed claim on your insurance carrier in this instance, and if so, is it full coverage or deductible? | 17. If deductible, state amount |
|---|---|
| Yes. Certain portions of claimant's losses may not be covered through insurance. | none |

18. If claim has been filed with your carrier, what action has your insurer taken or proposes to take with reference to your claim? *(It is necessary that you ascertain these facts)*

A representative of the insurance company has investigated the claim, including seeking information from the FAA under the Freedom of Information Act, and filed Notices and taken other actions to protect claimant's rights agaist other potentially responsible parties, including Sensis Corporation and the City of Syracuse; and has been in communication with claimant's attorneys. Further actions are stayed, pending formal submission of Proof of Loss.

| 19. Do you carry public liability and property damage insurance? | [X] Yes, if yes, give name and address of insurance company *(Number, street, city, State, and Zip Code)* | [ ] No |

Yes. See response to Number 15, above.

SF 95 (Rev. 7-85) BACK

<u>Additional Information for Standard Form 95 re:</u>
<u>Federal Tort Act Claim for money damages by Four Directions Air, Inc.</u>

<u>Item 8:</u>

Specifically, the collision damaged the leading edge of the right wing, necessitating its replacement,  the engine cowling of the right (number 3) engine, and the left pitot tube. Following the incident, the aircraft was inspected. A ferry permit was issued to permit the crew to fly the aircraft to Duncan Aviation, an authorized repair station in Battle Creek, Michigan.

<u>Item 9:</u>

Following the incident, the aircraft was inspected. A ferry permit was issued to permit the crew to fly the aircraft to Duncan Aviation, an authorized repair station in Battle Creek, Michigan. The necessary repairs cost approximately $142,000.00, as well as other expenses associated with repositioning and retrieving of the aircraft. During the approximately one month required to complete the repairs,.claimant was deprived of the use of the aircraft, as well as its share of the profits from charter operations under its Management Agreement with SmnithAir, Inc. In addition, as a result of this recent damage history to an otherwise immaculate and well equipped airplane, the market value of the aircraft was substantially decreased, and its utility reduced.

The aircraft is now back in service. It may be inspected at Tara Field in Hampton, Georgia. Arrangements for inspection should be made by contacting Jacques deLannoy, president, SmithAir, Inc., 510 Expressway Boulevard, Hampton, Georgia 30228. Mr. DeLannoy may be reached by telephone at (770) 946-8888.  Alternatively, arrangements for inspection may be made by contacting claimant's attorney at (207) 847-3107

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of the form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency: | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, street, city, State and Zip Code) |
|---|---|
| Federal Aviation Administration<br>Assitant Chief Counsel, Litigation AGC 400<br>800 Independence Avenue, SW<br>Washington, D.C. 20591 | SmithAir, Inc., as its interests may appear,<br>510 Expressway Boulevard<br>Hampton, Georgia 0228 |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. or P.M.) |
|---|---|---|---|---|
| MILITARY [ ]  CIVILIAN [x]  N/A | N/A | | December 8, 2004 | Approx. 8:00 pm. |

8. Basis of Claim *(State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof) (Use additional pages if necessary.)*

On December 8, 2004, at approximately 8:00 p.m. EST, one or more employees of the Federal Aviation Administration ("FAA") operating the ground control position in the FAA control tower at Syracuse-Hancock International Airport, acting in the scope of their employment, negligently directed a Dassault Falcon 50 aircraft (N 544RA), operated by claimant's employees, to taxi via taxiway "Yankee" by failing to advise or otherwise warn the crew of N 544RA that there was a contractor work crew conduting tests and other activities and unlighted equipment on that taxiway. The FAA personnel knew or should have known of the danger presented by the contractor work crew and equipment, and had a duty to warn the crew of N544RA thereof. They failed to do so, with the foreseeable result that the crew of the taxiing aircraft were unable to see the obstacles until it was too late to avoid a collision. Notwithstanding the crew's immediate corrective action, N544RA struck some of the equipment, thereby resulting in substantial damage to the aircraft and dimunition of its value. (Further informtion is provided on the attached pages.)

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT *(Number, street, city, State, and Zip Code)*

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. *(See instructions on reverse side.)*

The right wing of the aircraft collided with a board which the work crew had erected on the centerline of the taxiway, resulting in damage to right wing and engine cowling and left pitot tube. (Claimant's response is continued on attached additional pages.)

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

N/A

| 11. | WITNESSES |
|---|---|

| NAME | ADDRESS *(Number, street, city, State, and Zip Code)* |
|---|---|
| Jacques deLannoy (Pilot, N 544RA)<br>Russell Appleton (Pilot, N 544 RA)<br>Unknown employees of Sensis Corporation<br>Unknown employees of the City of Syracuse | 510 Expressway Boulevard, Hampton, GA 30228<br>5697 Foxchase Lane, Culpepper, Virginia 22701<br>5793 Tidewaters Parkway. Dewitt, NY. 13214<br>Counsel, 300 City Hall, 233 E.Washington St., Syracuse NY 13202 |

| 12. *(See instructions on reverse)* | AMOUNT OF CLAIM *(In dollars)* | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL *(Failure to specify may cause forfeiture of your rights.)* |
| $2,000,000.00 | N/A | N/A | 2,000,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT *(See instructions on reverse side.)* | 13b. Phone number of signatory | 14. DATE OF CLAIM |
|---|---|---|
| SmithAir, Inc., by William Gray Schaffer, its attorney. | (207) 847-3107 | June 3, 2005 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant shall forfeit and pay to the United States the sum of $2,000 plus double the amount of damages sustained by the United States. *(See 31 U.S.C. 3729.)* | Fine of not more than $10,000 or imprisonment for not more than 5 years or both. *(See 18 U.S.C. 287, 1001.)* |

95-109<br>Previous editions not usable.<br>Designed using Perform Pro, WHS/DIOR, Jun 98

NSN 7540-00-634-4046

STANDARD FORM 95 (Rev. 7-85) (EG)<br>PRESCRIBED BY DEPT. OF JUSTICE<br>28 CFR 14.2

RECEIVED

2005 JUN -1 □ 12:01

LITIGATION DIVISION

PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.

A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 38 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.

C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.

D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

INSTRUCTIONS
Complete all items - insert the word NONE where applicable

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF

Any instructions or information necessary in the preparation of your claim will be furnished, upon request, by the office indicated in Item #1 on the reverse side. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplemental regulations also. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with said claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file claim for both personal injury and property damage, claim for both must be shown in Item 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

*(b)* In support of claims for damage to property which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* Failure to completely execute this form or to supply the requested material within two years from the date the allegations accrued may render your claim "invalid". A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

Failure to specify a sum certain will result in invalid presentation of your claim and may result in forfeiture of your rights.

Public reporting burden for this collection of information is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden,

to  Director, Torts Branch
Civil Division
U.S. Department of Justice
Washington, DC  20530

and to the
Office of Management and Budget
Paperwork Reduction Project (1105-0008)
Washington, DC  20503

INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

| 15. Do you carry accident insurance? | [X] Yes. If yes, give name and address of insurance company *(Number, street, city, State, and Zip Code)* and policy number. | [ ] No |

Insured through Global Aerospace, Inc., 399 Peachtree Road, NE, Suite 1420, Atlanta, Georgia 30326. Polciy No. FHL 12116

| 16. Have you filed claim on your insurance carrier in this instance, and if so, is it full coverage or deductible? | 17. If deductible, state amount |
|---|---|
| Yes.  Certain portions of claimant's losses may not be covered through insurance. | none |

18. If claim has been filed with your carrier, what action has your insurer taken or proposes to take with reference to your claim? *(It is necessary that you ascertain these facts)*

A representative of the insurance company has investigated the claim, including seeking information from the FAA under the Freedom of Information Act, and filed Notices and taken other actions to protect claimant's rights agaist other potentially responsible parties, including Sensis Corporation and the City of Syracuse; and has been in communication with claimant's attorneys. Further actions are stayed,  pending formal submission of Proof-of Loss.

| 19. Do you carry public liability and property damage insurance? | [X] Yes, if yes, give name and address of insurance company *(Number, street, city, State, and Zip Code)* | [ ] No |

Yes. See response  to Number 15, above.

SF 95 (Rev. 7-85) BACK

Additional Information for Standard Form 95 re:
Federal Tort Act Claim for money damages by SmithAir, Inc.

Item 8:

Specifically, the collision damaged the leading edge of the right wing, necessitating its
replacement,  the engine cowling of the right (number 3) engine, and the left pitot tube.
Following the incident, the aircraft was inspected. A ferry permit was issued to permit the crew
to fly the aircraft to Duncan Aviation, an authorized repair station in Battle Creek, Michigan.

Item 9:

Following the incident, the aircraft was inspected. A ferry permit was issued to permit the crew
to fly the aircraft to Duncan Aviation, an authorized repair station in Battle Creek, Michigan.
The necessary repairs cost approximately $142,000.00, as well as other expenses associated with
repositioning and retrieving of the aircraft. During the approximately one month required to
complete the repairs,.claimant was deprived of the use of the aircraft; was required to incur
additional expenses to meet existing commitments; was deprived of the opportunity to respond to
requests for charter services from new and existing customers; lost revenues; and lost profits
which this aircraft traditionally earned. In addition, as a result of this recent damage history to an
otherwise immaculate and well equipped airplane, the market value of the aircraft was
substantially decreased, and its utility reduced.

The aircraft is now back in service. It may be inspected at Tara Field in Hampton, Georgia.
Arrangements for inspection should be made by contacting Jacques deLannoy, president,
SmithAir, Inc., 510 Expressway Boulevard, Hampton, Georgia 30228. Mr. DeLannoy may be
reached by telephone at (770) 946-8888.  Alternatively, arrangements for inspection may be
made by contacting claimant's attorney at (207) 847-3107

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of the form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency: | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, street, city, State and Zip Code) |
|---|---|
| Federal Aviation Administration<br>Assitant Chief Counsel, Litigation AGC 400<br>800 Independence Avenue, SW<br>Washington, D.C. 20591 | Russell Appeleton<br>5697 Foxchase Lane<br>Culpepper, Virginia 22701 |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. or P.M.) |
|---|---|---|---|---|
| ☐ MILITARY  ☒ CIVILIAN  N/A | N/A | N/A | December 8, 2004 | Approx. 8:00 pm. |

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof) (Use additional pages if necessary.)

On December 8, 2004, I was the pilot in command of a Falcon 5N 544RA for a planned fligt from Syracuse, NY to Teterboro, NJ. After receiving our IFR clearance, we were directed by the FAA tower to taxi from our ramp to the departure runway, via taxiway "Yankee." During our taxi, and in the vicinity of intesection "Papa," our lights illuminated an obstruction on the centerline of the taxiway. Although I was able to avoid striking the object "head on," our right wing struck the object, causing substantial doamage to the aircraft. I subsequently learned that the FAA tower had been advised that there would be men and unlighted equipment on the taxiway, but they never informed us of the obstructions. If the controllers had performed their duties of advising us of any known hazardous conditions, or directing others to exit the taxiway,this accident would never have occurred. This is the only "accident" on my record as a pilot. As a result, my professional reputation has been irreparably damaged, and I am no longer considered eligible for certain jobs, with a consequent loss of future income.

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, street, city, State, and Zip Code)

Four Directions Air, Inc. 5218 Patrick Avenue, Verona, NY 347

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side.)

N/A

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

Damage to professional reputation; loss of future earnings ability. See item 8 above.

| 11. | WITNESSES |
|---|---|

| NAME | ADDRESS (Number, street, city, State, and Zip Code) |
|---|---|
| Jacques deLannoy (Pilot, N 544RA)<br>Unknown employees of Sensis Corporation<br>Unknown employees of the City of Syracuse | 510Expressway Boulevard, Hampton, GA 30228<br>Tidewaters Parkway,  Dewitt, NY. 13214<br>Corp. Counsel, 300 City Hall, 233 E.Washington St., Syracuse NY 13202 |

| 12. (See instructions on reverse) | | AMOUNT OF CLAIM (In dollars) | | |
|---|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) | |
| N/A | $ 1,000,000.00 | N/A | 2,000,000.00 | |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.) | 13b. Phone number of signatory | 14. DATE OF CLAIM |
|---|---|---|
| Russell Appleton, by William Gray Schaffer, his attorney. | (207) 847-3107 | June 3, 2005 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant shall forfeit and pay to the United States the sum of $2,000 plus double the amount of damages sustained by the United States. (See 31 U.S.C. 3729.) | Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.) |

| 95-109 | NSN 7540-00-634-4046 | STANDARD FORM 95 (Rev. 7-85) (EG) |
|---|---|---|
| Previous editions not usable.<br>Designed using Perform Pro. WHS/DIOR, Jun 98 | | PRESCRIBED BY DEPT. OF JUSTICE<br>28 CFR 14.2 |

RECEIVED

2005 JUN -7 P 12: 01

LITIGATION DIVISION

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.

A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 38 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.

C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.

D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

## INSTRUCTIONS
### Complete all items - Insert the word NONE where applicable

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

Any instructions or information necessary in the preparation of your claim will be furnished, upon request, by the office indicated in Item #1 on the reverse side. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplemental regulations also. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with said claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file claim for both personal injury and property damage, claim for both must be shown in Item 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to completely execute this form or to supply the requested material within two years from the date the allegations accrued may render your claim "invalid". A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

Failure to specify a sum certain will result in invalid presentation of your claim and may result in forfeiture of your rights.

Public reporting burden for this collection of information is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden,

to  Director, Torts Branch
    Civil Division
    U.S. Department of Justice
    Washington, DC 20530

and to the
Office of Management and Budget
Paperwork Reduction Project (1105-0008)
Washington, DC 20503

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

15. Do you carry accident insurance?  ☐ Yes, If yes, give name and address of insurance company *(Number, street, city, State, and Zip Code)* and policy number.  ☒ No

16. Have you filed claim on your insurance carrier in this instance, and if so, is it full coverage or deductible?

N/A

17. If deductible, state amount

18. If claim has been filed with your carrier, what action has your insurer taken or proposes to take with reference to your claim? *(It is necessary that you ascertain these facts)*

N/A

19. Do you carry public liability and property damage insurance?  ☐ Yes, if yes, give name and address of insurance company *(Number, street, city, State, and Zip Code)*  ☒ No

N/A

SF 95 (Rev. 7-85) BACK

**EXHIBIT  B**

| | | |
|---|---|---|
| In the Matter of the Claim of | : | |
| Four Directions Air, Inc. and owners of Dissault Falcon jet aircraft, F.A.A. Registration number N 544RA | : : | NOTICE OF CLAIM |
| - against - | : | |
| The City of Syracuse | : | |

Re: Notice of Negligence claim
Date of Accident: December 8, 2004
Syracuse-Hancock International Airport

Dear Sir/Madam:

Pursuant to the New York General Municipal Law, Article 4, §§ 50-c and 50-i, Four Directions Air, Inc., on behalf of itself and any other owners of the Dissault Falcon jet aircraft ("Claimant") bearing Federal Aviation Administration ("FAA") number N 544RA ("Falcon N 544RA"), hereby notifies the City of Syracuse, of the following claims against the City of Syracuse (the "City") for damages sustained as the result of negligent acts of the City and its employees.

1.  *Name of Claimant and its attorneys:*

Four Directions Air, Inc., on behalf of itself and any other owners of the Falcon N 544RA

Stephen J. Selden, Esquire
General Counsel
Four Directions Air, Inc.
5218 Patrick Road
Verona, New York 13478
(315) 361-8687

William Gray Schaffer, Esquire
20 Cumberland Street
Yarmouth, Maine 04096
(207) 847-3107

2.    *Nature of claim:* Negligence (see below)

During the evening of December 8, 2004 a City employee, acting within the course and scope of his employment, escorted a contractor work crew and equipment to an active taxiway ("taxiway 'Yankee'") at the Syracuse-Hancock International Airport for the purpose of conducting certain radar tests. Taxiway "Yankee" was - and was known by the City to be - an active aircraft operations area on which the presence of personnel and unlighted equipment created a clear and foreseeable risk that taxiing aircraft would be unable to see such personnel and/or their equipment. Notwithstanding this risk, the City employee departed from the test site on taxiway "Yankee," leaving the work crew and equipment with neither lights or other means of warning approaching taxiing aircraft of their presence, and without any means of monitoring or communicating with the FAA airport control tower regarding such traffic.

As a direct and proximate result of the above described negligence of the City, Falcon N 544RA, which had been directed by the FAA tower to taxi via taxiway "Yankee" to its departure runway, collided with a radio antenna which had been placed in the center of the active taxiway by the work crew.  The flight crew of Falcon N 544RA were operating the aircraft with all due care, and in compliance with the tower's instructions, had no opportunity to see the equipment negligently left on the taxiway until it was too late to prevent a collision.

3.    *Time, place, and manner in which the claim arose:*

December 8, 2004
7:55 p.m. local time
Syracuse Hancock International Airport
Taxiway "Yankee" near intersection with taxiway "Papa."

4.    *Items of damage sustained:*

The aircraft sustained substantial damage to the leading edge of the right wing, the number 3 (right) engine cowling, the number 2 pitot tube, and other components, and as a result was rendered un-airworthy, and taken out of revenue producing service. After the aircraft damage was inspected, the FAA issued a Ferry Permit to fly the aircraft to a repair station in Michigan, where it remained out of service for approximately one month in order to accomplish the repairs required to return the aircraft to service.

As a direct and proximate result of the City's negligence summarized above, Claimant sustained monetary damages including but not limited to the following:

The cost of aircraft repairs
Diminution of value of the aircraft

-2-

Loss of use
Lost charter revenues
Additional charter and other expenses

Dated: March 7, 2005

FOUR DIRECTIONS AIR, INC.

By: _____
Stephen J. Selden, Esq.

## VERIFICATION

Stephen J. Selden, being duly sworn, deposes and says that he is general counsel of Four Directions Air, Inc., the Claimant herein; he has reviewed the above Notice of Claim, and verifies the same to be true based upon his own first-hand knowledge and/or upon information and belief.

_____
Stephen J. Selden

Sworn before me this
day of March 2005

_____
Notary Public

GAY M. POMEROY
Notary Public. State of New York
Qualified in Onon. Co. No. 01PO8405420
My Commission Expires March 6. 2007

In the Matter of the Claim of

**Four Directions Air, Inc. and
owners of Dissault Falcon jet aircraft,
F.A.A. Registration number N 544RA**

**AFFIDAVIT OF SERVICE**

   -against-

**The City of Syracuse**

COUNTY OF ONONDAGA  )
STATE OF NEW YORK     )  SS:

     JANET NEEDHAM MCGRAW, being duly sworn, depose and say that I am not a party to the action or proceeding, I am over 18 years of age and I reside in the City of Syracuse, New York. On the 7th day of March, 2005, I personally served a Notice of Claim on the City of Syracuse by serving same on Ramona L. Rabeler, Esq., Assistant Corporation Counsel, Department of Law, City Hall Room 300, 233 East Washington Street, Syracuse, New York 13202.

                                     JANET NEEDHAM MCGRAW

Sworn to and subscribed before me
this 8th day of March, 2005

NOTARY PUBLIC

SHEILA J. COLLINS
Notary Public, State of New York
Qualified in Onondaga County
No. 01CO5049305
My Commission Expires September 18, 2005

| In the Matter of the Claim of | : | |
|---|---|---|
| SmithAir, Inc. | : | |
| | : | NOTICE OF CLAIM |
| - against - | : | |
| The City of Syracuse | : | |



Re: Notice of Negligence claim
Date of Accident: December 8, 2004
Syracuse-Hancock International Airport

Dear Sir/Madam:

Pursuant to the New York General Municipal Law, Article 4, §§ 50-e and 50-i, SmithAir, Inc. hereby notifies the City of Syracuse, of the following claims against the City of Syracuse for damages sustained as the result of negligent acts of the City and its employees.

1.     *Name of Claimant:*

SmithAir, Inc.
Tara Field
510 Speedway Boulevard
Hampton, GA 30228

2.     *Nature of claim:*  Negligence (see below):

During the evening of December 8, 2004 a City of Syracuse employee, acting within the course and scope of his employment, escorted a contractor work crew and equipment to an active taxiway ("taxiway 'Yankee'") at the Syracuse-Hancock International Airport for the purpose of conducting certain radar tests. Taxiway "Yankee" was - and was known by the City to be - an active aircraft operations area on which the presence of personnel and unlighted equipment created a clear and foreseeable risk that taxiing aircraft will be unable to see such personnel and/or their equipment. Notwithstanding this risk, the City employee departed from the test site on taxiway "Yankee," leaving the work crew and equipment with neither lights or other means of warning approaching taxiing aircraft of their presence, and without any means of monitoring or communicating with the FAA airport control tower regarding such traffic.

As a direct and proximate result of the above described negligence of the City, an aircraft entitled Falcon N 544RA, which was operated and managed by Claimant SmithAir, Inc., and which had been directed by the FAA tower to taxi via taxiway "Yankee" to its departure runway, collided with a radio antenna which had been placed in the center of the active taxiway by the work crew. SmithAir, Inc. was operating and managing the aircraft with all due care, and in compliance with the tower's instructions, had no opportunity to see the equipment negligently left on the taxiway until it was too late to prevent a collision.

3.      *Time, place, and manner in which the claim arose*:

    December 8, 2004
    7:55 p.m. local time
    Syracuse Hancock International Airport
    Taxiway "Yankee" near intersection with taxiway "Papa."

4.      *Items of damage sustained:*

    As a direct and proximate result of the City's negligence summarized above, SmithAir, Inc. suffered damages including but not limited to the following: expenses related to aircraft repairs; loss of use; lost charter revenues; and additional charter expenses.

Dated: March 4, 2005                    SMITHAIR, INC.

                                        By: _____
                                            Jacques deLannoy

## VERIFICATION

    Jacques deLannoy, being duly sworn, deposes and says that he is president of SmithAir, Inc, the Claimant herein; he has reviewed the above Notice of Claim, and verifies the same to be true based upon his own first-hand knowledge and/or upon information and belief.

                                        _____
                                        Jacques deLannoy

Sworn before me this 5th
day of March 2005

_____
Notary Public

---

In the Matter of the Claim of

SmithAir, Inc.                                    **AFFIDAVIT OF SERVICE**

   -against-

The City of Syracuse

---

COUNTY OF ONONDAGA   )
STATE OF NEW YORK      )   SS:

     JANET NEEDHAM MCGRAW, being duly sworn, depose and say that I am not a party to the action or proceeding, I am over 18 years of age and I reside in the City of Syracuse, New York. On the 7th day of March, 2005, I personally served a Notice of Claim on the City of Syracuse by serving same on Ramona L. Rabeler, Esq., Assistant Corporation Counsel, Department of Law, City Hall Room 300, 233 East Washington Street, Syracuse, New York 13202.

                                           JANET NEEDHAM MCGRAW

Sworn to and subscribed before me
this 8th day of March, 2005

NOTARY PUBLIC

             SHEILA J. COLLINS
             Notary Public, State of New York
             Qualified in Onondaga County
             No. 01CO5049305
            My Commission Expires September 18, 2005

In the Matter of the Claim of                    :

Russell W. Appleton                              :

                                                 :        NOTICE OF CLAIM

        - against -                              :

The City of Syracuse                             :

                        Re:  Notice of Negligence claim
                        Date of Accident:  December 8, 2004
                        Syracuse-Hancock International Airport

Dear Sir/Madam:

        Pursuant to the New York General Municipal Law, Article 4, §§ 50-e and 50-i,
Russell Appleton hereby notifies the City of Syracuse, of the following claims against the
City of Syracuse for damages sustained as the result of negligent acts of the City and its
employees.

1.      *Name of Claimant:*

        Russell W. Appleton
        15697 Fox Chase Lane
        Culpepper, VA  22701

2.      *Nature of claim:*  Negligence (see below):

        During the evening of December 8, 2004 a City of Syracuse employee, acting
within the course and scope of his employment, escorted a contractor work crew and
equipment to an active taxiway ("taxiway 'Yankee'") at the Syracuse-Hancock
International Airport for the purpose of conducting certain radar tests. Taxiway "Yankee"
was - and was known by the City to be - an active aircraft operations area on which the
presence of personnel and unlighted equipment created a clear and foreseeable risk that
taxiing aircraft will be unable to see such personnel and/or their equipment.
Notwithstanding this risk, the City employee departed from the test site on taxiway
"Yankee," leaving the work crew and equipment with neither lights or other means of
warning approaching taxiing aircraft of their presence, and without any means of
monitoring or communicating with the FAA airport control tower regarding such traffic.

Claimant Russell Appleton, Airline Transport Pilot FAA Certificate # 2581390, who was the pilot-in-command of an aircraft entitled Falcon N 544RA, was directed by the FAA tower to taxi the aircraft via taxiway "Yankee" to its departure runway. As a direct and proximate result of the above described negligence of the City, the aircraft collided with a radio antenna which had been placed in the center of the active taxiway by the work crew. Claimant was piloting the aircraft with all due care, and in compliance with the tower's instructions, had no opportunity to see the equipment negligently left on the taxiway until it was too late to prevent a collision.

3.      *Time, place, and manner in which the claim arose*:

December 8, 2004
7:55 p.m. local time
Syracuse Hancock International Airport
Taxiway "Yankee" near intersection with taxiway "Papa."

4.      *Items of damage sustained*:

As a direct and proximate result of the City's negligence summarized above, Claimant suffered damages including but not limited to damages to his professional reputation as a pilot, which has damaged his future earning capacity.

Dated: March 4, 2005

Russell W. Appleton
Russell W. Appleton

## VERIFICATION

**Russell W. Appleton**, being duly sworn, deposes and says that he is an individual over 18 years of age, and has reviewed the above Notice of Claim, and verifies the same to be true based upon his own first-hand knowledge and/or upon information and belief.

Russell W. Appleton
Russell W. Appleton

Sworn before me this 5th
day of March 2005

Jessica Danielle Davis
Notary Public

In the Matter of the Claim of

Russell W. Appleton                                    **AFFIDAVIT OF SERVICE**

   -against-

The City of Syracuse

COUNTY OF ONONDAGA  )
STATE OF NEW YORK        )    SS:

    JANET NEEDHAM MCGRAW, being duly sworn, depose and say that I am not a party to the action or proceeding, I am over 18 years of age and I reside in the City of Syracuse, New York. On the 7th day of  March, 2005, I personally served a Notice of Claim on the City of Syracuse by serving same on Ramona L. Rabeler, Esq., Assistant Corporation Counsel, Department of Law, City Hall Room 300, 233 East Washington Street, Syracuse, New York 13202.

JANET NEEDHAM MCGRAW

Sworn to and subscribed before me
this 8th day of March, 2005

NOTARY PUBLIC
SHEILA J. COLLINS
Notary Public, State of New York
Qualified in Onondaga County
No. 01CO5049305
My Commission Expires September 18, 2005