UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**FOUR DIRECTIONS AIR, INC.,
SMITHAIR, INC.,
RUSSELL W. APPLETON,**

        Plaintiffs,

    **v.**                          5:06-CV-283 (NAM/GHL)

**UNITED STATES OF AMERICA,
CITY OF SYRACUSE, and
THE SENSIS CORPORATION**,

        Defendants.
_____

**APPEARANCES:**                         **OF COUNSEL:**

OFFICE OF EDWARD Z. MENKIN        EDWARD Z. MENKIN, ESQ.
State Tower Building, Suite 909
109 South Warren Street
Syracuse, NY 13202
*Attorney for Four Directions Air, Inc.*

ONEIDA INDIAN NATION             PETER D. CARMEN, ESQ.
LEGAL DEPARTMENT               MEGHAN MURPHY BEAKMAN, ESQ.
5218 Patrick Road
Verona, NY 13478
*Attorneys for Four Directions Air, Inc.,*
*Smithair, Inc., and Russell Appleton*

UNITED STATES DEPARTMENT OF JUSTICE  KATHRYN L. SMITH, ESQ.
TORTS BRANCH CIVIL DIVISION
Post Office Box 14271
Washington, D.C. 20044-4271

PINO & ASSOCIATES, LLP             BRIAN W. COLISTRA, ESQ.
Westchester Financial Center
50 Main Street
White Plains, New York 10606
*Attorneys for City of Syracuse*

COSTELLO, COONEY & FEARON, PLLC   MAUREEN G. FATCHERIC, ESQ.

205 South Salina Street
Syracuse, New York 13202
*Attorneys for Sensis Corporation*

**NORMAN A. MORDUE, Chief U.S. District Judge**

**MEMORANDUM - DECISION AND ORDER**

**I.      Introduction**

Currently pending before the Court is a motion for judgment on the pleadings brought by defendant, the Sensis Corporation ("Sensis") to dismiss the claims of plaintiffs SmithAir, Inc. ("SmithAir") and Russell W. Appleton ("Appleton") in their entirety as against Sensis pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. *See* Dkt. No. 22, Notice of Mot.  For the reasons that follow below, the Court GRANTS Sensis' Rule 12 (c) motion for judgment on the pleadings and DISMISSES SmithAir's and Appleton's claims in their entirety as against Sensis.

**II.     The Complaint**

On March 6, 2006, plaintiffs, Four Directions Air, Inc. ("Four Directions"), SmithAir, and Appelton, filed a complaint against defendants, the United States of America, the City of Syracuse ("City") and Sensis alleging that defendants' negligence caused an airplane accident to occur at Syracuse Hancock International Airport ("Airport"). *See* Dkt. No. 1. Compl. at ¶ 1. Four Directions, a corporation existing under the laws of the Oneida Indian Nation, owned the Falcon 50 jet aircraft involved in the accident.  SmithAir, a corporation existing under the laws of the State of Georgia, managed, maintained and operated the aircraft on behalf of Four Directions and provided charter services to third parties.  Appleton, a resident of Georgia, is a professional pilot.  At the time of the accident, Appleton was piloting the aircraft while in the employ of SmithAir. *See id.* at ¶¶ 7-9.

At all relevant times Sensis was performing contractual work for the Federal Aviation

2

Administration in connection with the development, production, installation and testing of a new ground surveillance radar system ("GSRS"). In order to facilitate this work, Sensis negotiated a lease with the City, which provided space at the Airport for Sensis to store its equipment and test components of the GSRS. To calibrate the GSRS, Sensis moved "test targets" and equipment to various locations at the Airport, including aircraft "movement areas." *See* Dkt. No. 1, Compl. at ¶¶ 20-22.

On December 8, 2004, at approximately 8:00 p.m., Sensis and the City scheduled a test in which Sensis placed GSRS testing equipment on the "Yankee" taxiway at or near the intersection of the Yankee and "Papa" taxiways at the Airport. After having obtained clearance from the Airport's Air Traffic Control Tower, ("Control Tower"), a City-owned vehicle escorted a Sensis vehicle and personnel to the test location and then left the test-site.[1] *See id.* at ¶¶ 23-26. Sensis' GSRS testing equipment included two ten-foot, black-painted steel poles mounted on bases with rolling wheels. Sensis positioned one pole in the center of the Yankee taxiway and the other to the side of the taxiway. *See id.* at ¶ 27.

Shortly before 8:00 p.m., Appleton and SmithAir co-pilot Jacques deLannoy were preparing to taxi to a runway for their flight to Teterboro, New Jersey, and they contacted the Control Tower to obtain clearance and departure instructions. The Control Tower instructed Appleton and deLannoy to taxi to runway 28 via the Yankee taxiway. *See id.* at ¶¶ 30-31. According to the complaint, the Control Tower did not alert SmithAir that Sensis personnel were testing equipment on the Yankee taxiway. The complaint further alleges that Sensis' personnel neither attempted to warn SmithAir of the obstruction created by their equipment nor attempted to move the equipment. *See* Dkt. No. 1,

---

[1] According to the complaint, the escort was necessary because the Sensis vehicle was not equipped with a radio capable of two-way communication with the Control Tower.

Compl. at ¶¶ 32-33. The complaint alleges that by the time the SmithAir crew saw the unilluminated testing equipment obstructing their aircraft's path, a collision was imminent. Despite Appleton's evasive maneuvers, the aircraft struck the GSRS component pole in the center of the taxiway, causing damage to the aircraft and rendering it inoperable for commercial flight without repairs. *See id.* at ¶¶ 34-39.

SmithAir and Appleton assert a negligence cause of action against Sensis. *See id.* at ¶¶ 53-60. SmithAir alleges that it suffered the following damages as a result of defendants' negligence:

> [1] [l]oss of net revenue to which it would have been entitled under its Aircraft Management Agreement with Four Directions resulting from third party charters, some of which had already been scheduled, and others as to which inquiries had been made, but which had not been definitively booked at the time of the incident; [2] [e]xpenses associated with procuring a replacement aircraft to complete one or more confirmed charters in which it was engaged at the time of the incident; and [3] [d]amage to its business reputation resulting from its inability to respond to customer inquiries and uncertainties regarding the future availability of a Falcon 50 aircraft for charter.

*See id.* at ¶ 63. SmithAir seeks compensation to offset its increased expenses, decreased revenues, and damage to its business reputation. *See id.* at ¶ 64.

Appleton alleges that he suffered the following damages as a result of defendants' negligence and resulting reportable accident :

> [1] loss of his previously accident-free record and damage to his professional reputation as a pilot, the reasonably foreseeable result of which is that [he] will be disqualified from pursuing opportunities for employment and advancement in corporate aviation for which he was otherwise eligible and which he previously had planned on pursuing; and [2] loss of future earnings and reduction in employment opportunities as a result of this accident.

*See id.* at ¶ 65. Appleton seeks compensation to offset his losses. *See id.* at ¶ 66.

**III.    Discussion**

   *A.    Legal Standard*

4

Rule 12(c) provides in pertinent part that "[a]fter the pleadings are closed but within such time as not to delay trial, any party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). The test for evaluating a motion for judgment on the pleadings under Rule 12(c) is the same as that applicable to a motion for failure to state a claim under Rule 12(b)(6). *See Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998). Judgment on the pleadings is appropriate if, from the pleadings, the moving party is entitled to judgment as a matter of law. *See Burns Int'l Sec. Serv. v. International Union, United Plant Guard Workers of America*, 47 F. 3d 14, 16, (2d Cir. 1995) (citing *George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.*, 554 F. 2d 551, 553 n.2 (2d Cir. 1977)). The Court must accept as true the allegations contained in plaintiffs' complaint and draw all reasonable inferences in plaintiffs' favor. *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). Furthermore, the Court may consider documents attached to the complaint as an exhibit or incorporated by reference, matters of which the court may take judicial notice, or documents either in plaintiffs' possession or of which plaintiffs had knowledge of and relied upon in bringing suit. *Brass v. American Film Technologies, Inc.*, 987 F. 2d 142, 150 (2d Cir. 1993). Dismissal is not appropriate unless "it appears beyond a reasonable doubt that . . . plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994). However, while the Court must accept the non-moving party's well-pleaded factual allegations as true, the Court need not accept the pleader's "legal conclusions [and] characterizations." *Madonna v. United States*, 878 F.2d 62, 65 (2d Cir. 1989).

  *B. Sensis' Motion to Dismiss*

Sensis contends that the Court must dismiss SmithAir and Appleton's complaint for their failure to state a cognizable claim under New York Law. Sensis advances two principal arguments

5

in support of dismissal. First, Sensis argues that because SmithAir's and Appleton's negligence cause of action is not accompanied by allegations of property damage or personal injury, they have failed to state a viable cause of action under New York Law. Second, Sensis argues SmithAir's and Appleton's claims for loss of reputation are essential elements of a defamation action, and that they are masquerading these claims as ones sounding in negligence to avoid a dismissal of their suit based upon the one-year statute of limitations for defamation suits. *See* Dkt. No. 22, Mem. of Law at 2-3.

        1.        Negligence

To establish a prima facie case of negligence under New York law, "a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom.' " *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (quoting *Solomon ex rel. Solomon v. City of New York*, 66 N.Y.2d 1026, 1027, 489 N.E.2d 1294, 1294, 499 N.Y.S.2d 392, 392 (1985)). "It is an elementary principle that actionable negligence requires injury to the person or property as the proximate result of the allegedly negligent act." *Greco v. Nat'l Transp. Co.*, 222 N.Y.S.2d 145 (1st Dep't 1961) (citation omitted); *Brazos v. Brumidge*, 6 A.D.2d 494, 496, 179 N.Y.S.2d 730 (1st Dep't 1958) ("In negligence, no recovery may be had even where there is fault, if no injury follows."). Under the "economic loss rule," "a negligence action seeking recovery for economic loss will not lie." *Suffolk County v. Long Island Lighting Co.*, 728 F.2d 52, 62 (2d Cir. 1984). In other words, "it is well-established under New York law that, where a plaintiff alleges only economic damages[2] resulting from defendant's alleged negligence, defendants owe no duty to plaintiffs with whom they are not in contractual privity." *Land*

---

[2] "Economic damage" refers to damages not involving "physical damage to person or property resulting from an accidental cause." *Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp.*, 725 F.Supp. 656, 665 n. 6 (N.D.N.Y. 1989) (McCurn, C.J.) (citations omitted).

6

*Mine Enters. v. Sylvester Builders, Inc.*, 74 F.Supp.2d 401, 407 (S.D.N.Y. 1999) (citing *Eaves Brooks Costume Co. v. Y.B.H. Realty Corp.*, 76 N.Y.2d 220, 557 N.Y.S.2d 286, 556 N.E.2d 1093 (1990); *Ossining Union Free School Dist. v. Anderson LaRocca Anderson*, 73 N.Y.2d 417, 541 N.Y.S.2d 335, 539 N.E.2d 91 (1989); *see also*, *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 271 A.D.2d 49, 711 N.Y.S.2d 391, 393 (2000) ("[P]ure economic losses (without property damage or personal injury) are not recoverable in a negligence action, and . . . a claimant suffering purely financial losses is restricted to an action in contract for the benefit of its bargain."); *Niagara Mohawk Power Corp. v. Ferranti-Packard Transformers, Inc.*, 157 Misc.2d 606, 611 (Sup. Ct. Chatauqua Co. 1993) ("There must be more than economic damages. There is no claim in tort solely for economic loss."). Although there are exceptions to the economic loss rule, *see Sommer* v. *Federal Signal Corp.*, 79 N.Y.2d 540, 550-52 (1992) (professional malpractice); *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 17 (2d Cir. 2000) (recognizing that the economic loss rule "allows such recovery in the limited class of cases involving liability for the violation of a professional duty"); *MCI Telecom. Corp. v. John Mezzalingua Assoc., Inc.*, 921 F.Supp. 936, 945 (N.D.N.Y. 1996) (Scullin, J.) (negligent performance of contractual services); *Metral v. Horn*, 213 A.D.2d 524, 526, 624 N.Y.S.2d 177 (2d Dep't 1995) (fraud), SmithAir's and Appleton's claims do not fall within these exceptions.[3]

---

[3] SmithAir and Appleton argue that their respective reputation-based economic losses are recoverable under *Kennedy v. McKesson Co.*, 58 N.Y.2d 500 (1983). In *McKesson*, the New York Court of Appeals cited earlier authority, *Becker v. Schwartz*, 46 N.Y.2d 401, 413 (1978) (dismissing "wrongful life" claim but sustaining claims for damages accruing as a consequence of the birth of impaired infants) and *Johnson v. State of New York*, 37 N.Y.2d 378, 383 (1975) (sustaining a cause of action for emotional harm and permitting recovery not only for plaintiff's pecuniary loss, but also for emotional harm caused by the tortious act) which "recognized that a plaintiff who states a cause of action in his own right predicated upon a breach of duty flowing from defendant to plaintiff may recover the pecuniary expenses he has borne as a result of that breach." 58 N.Y.2d at 504. Overturning the Appellate Division's order, the *McKessen* court reinstated "so much of the complaint as seeks to recover damages for other than emotional injuries . . . ." *Id.* at 503. In the Court's opinion, *McKessen* is inapposite; tellingly, neither case cited by the Court of Appeals in *McKessen* even considered damages to reputation. *Catalano v. Heraeus Kulzer, Inc.*, 305 A.D.2d 356, 357 (2d Dep't 2003), *infra*, represents the more current analysis of this issue.

Both SmithAir and Appleton operate and pilot airplanes. At the time of the accident, Appleton was piloting an aircraft maintained and operated by SmithAir but owned by Four Directions. The aircraft collided with Sensis' GSRS testing equipment on the Yankee taxiway. Although Four Directions' aircraft suffered physical damage as a result, the collision caused no personal injury to Appleton and no physical damage to any of SmithAir's property.

SmithAir claims to have suffered the following damages: loss of net revenue, expenses associated with procuring a new aircraft, and damage to its business reputation. Appleton claims to have suffered damage to his professional reputation as a pilot, which he claims will result in the loss of future earnings.[4] These alleged damages are purely economic in nature. *See Greater New York Auto. Dealers Ass'n v. Envtl. Syss. Testing*, 211 F.R.D. 71, 82 (E.D.N.Y. 2002) ("Loss of business and loss of good will are generally classified as 'economic' damages."); *Catalano*, 305 A.D.2d at 357 (affirming dismissal of plaintiff's cause of action for negligence based upon the economic loss rule where "[t]he plaintiff, who sought to recover damages for loss of professional reputation and business goodwill, suffered no personal injury or property damage."). Based upon the economic loss rule, SmithAir's and Appleton's damages are not recoverable.

2. Damage to Reputation as Defamation

Sensis argues that SmithAir's and Appleton's claims also fail because they miscast their claims as sounding in negligence rather than defamation to avoid triggering the one-year statute of limitations for defamation claims. The elements of a defamation claim are "[1] a false statement, [2]

---

[4]Appleton's claimed damages seem to anticipate injuries to his reputation that, based upon the way in which those injuries were framed–"*the reasonably foreseeable result* of which is that [he] *will be* disqualified from pursuing opportunities for employment and advancement in corporate aviation . . . ; and [2] loss of *future* earnings and reduction in employment opportunities as a result of this accident," *see* Dkt. No. 1, Compl. at ¶ 66 (emphasis added)–suggest that he may not yet have in fact suffered any injuries to his reputation.

8

published without privilege or authorization to a third party, [3] constituting fault as judged by, at a minimum, a negligence standard, and [4] either caus[ing] special harm or constitut[ing] defamation per se." *Dillon v. City of New York*, 704 N.Y.S.2d 1, 5 (1st Dep't 1999) (citing Restatement (Second) of Torts § 558 (1977)). With respect to the second element, "publication occurs when the [defamatory] words are read 'by someone other than the person libeled and the person making the charges.' " *Van-Go Transp. Co. v. New York City Bd. of Educ.*, 971 F.Supp. 90, 102 (E.D.N.Y. 1997) (quoting *Fedrizzi v. Washingtonville Cent. Sch. Dist.*, 611 N.Y.S .2d 584, 585 (2d Dep't 1994)).

"New York courts have been alert to attempts to circumvent the one-year period for defamation actions by characterizing the claim or injury as something else, *e.g.*, as negligence, intentional or negligent interference with reputation or prospective contractual relationships, intentional infliction of emotional harm or prima facie tort." *Torres v. CBS News*, 879 F.Supp. 309, 316 (S.D.N.Y. 1995). The New York Court of Appeals opinion in *Morrison v. Nat'l Broad. Corp.*, 19 N.Y.2d 453, 280 N.Y.S.2d 641, 644, 227 N.E.2d 572 (1967) is instructive as to the broad reach of defamation:

> The harm assertedly sustained by the plaintiff--injury to his reputation--is precisely the same as that caused by defamation . . . The broad reach of the common-law cause of action for defamation is indicated in the Restatement of Torts. "A communication is defamatory . . . if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Thus, unlike most torts, defamation is defined in terms of the injury, damage to reputation, and not in terms of the manner in which the injury is accomplished. This is borne out by Comment *a* to section 559, where it is noted that "The word 'communication' is used to denote the fact that one person has brought an idea to the perception of another" . . . [W]e look for the reality, and the essence of the action and not its mere name.

*Morrison*, 19 N.Y.2d at 458-59; *see also Gallagher v. Metro North Commuter R.R. Co.*, 846 F.Supp. 291, 293 (S.D.N.Y. 1994) (looking to the essence of plaintiff's claim, the court looked beyond

plaintiff's "mental distress" claim characterization and concluded that plaintiff's claim was for defamation); *Ramsay v. Bassett Hospital*, 113 A.D.2d 149, 151, 495 N.Y.S.2d 282, 284 (3d Dep't 1985) (holding that plaintiff's negligence claim was in reality one for defamation because plaintiff sought redress for injury to his reputation and career and was therefore subject to one-year statute of limitations).

A party seeking recovery for an injury to reputation is claiming defamation, not negligence. In *Hall v. United Parcel Service of America, Inc.*, 76 N.Y.2d 27, 556 N.Y.S.2d 21, 555 N.E.2d 273 (1990), United Parcel Service ("UPS") forced an employee to leave his job after failing a lie detector test, which it administered during an investigation. Thereafter, the employee sought to assert a negligence cause of action against the people UPS retained to administer the test. The New York Court of Appeals explained that

> if plaintiff had sustained physical injury from the test rather than the less tangible reputational injury he sustained, there would be no question of his right to maintain a cause of action against the examiner, notwithstanding the absence of a relationship of privity. The problematic aspect of this case is not the absence of a contractual relationship between plaintiff and defendants, but rather the nature of the harm for which plaintiff seeks a remedy. Injuries to an individual's personal and professional reputation . . . have long been compensated through the traditional remedies for defamation.

*Hall*, 76 N.Y.2d at 32.

In *Santagada v. Liefdata Med. Servs., Inc.*, 1993 WL 378309, at *3 (S.D.N.Y. Sept. 22, 1993), the court observed that New York courts have made clear that a cause of action that claims only damage to reputation is governed by the one-year period applicable to defamation actions. From its review of New York case law, the *Santagada* court derived the following "straightforward rule: if an action is one solely or primarily claiming injury to reputation, it is in the nature of a defamation action for purposes of the applicable statute of limitations, *regardless of the conduct that allegedly*

10

*caused the injury.*" *Santagada*, 1993 WL 378309, at *5 (emphasis added).[5]

Applying this rule to Appleton's claims yields a clear answer: the only injury claimed is essentially damage to Appleton's professional reputation as a pilot. Therefore, Appleton's claims are subject to the one-year statute of limitations for defamation set forth in N.Y. C.P.L.R. § 215. Because Appleton commenced the suit more than one-year after the collision, his claims are untimely and dismissal is appropriate on this basis. Although SmithAir also claims damage to its business reputation, *see* Dkt. No. 1, Compl. at ¶ 63(c), it is not clear that SmithAir's claim of damage to its business reputation subsumes its claims of loss of net revenue and expenses associated with procuring a replacement aircraft for its scheduled charter flights. It is not clear that SmithAir is pursuing damages recoverable exclusively under a theory of defamation. Therefore, dismissal of SmithAir's claims based upon the statute of limitations for defamation is not appropriate.

## IV.   Conclusion

Plaintiffs may recoup business reputation and economic losses, but they must first demonstrate a personal or property injury to which such losses attach. SmithAir and Appleton have failed to meet their burden in this regard. They assert a cause of action for negligence against Sensis but fail to allege any direct physical damage to person or property. Under the economic loss rule, SmithAir's and Appleton's alleged damages are not recoverable under a theory of negligence. Furthermore, looking to the essence of Appleton's claims, the Court concludes that they sound in

---

[5] The Court accepts the rule articulated in *Santagada* and also recognizes the incongruity of asserting a defamation cause of action in an accident case. While a "defendant's conduct causes an event," the "conduct itself does not communicate an idea[; rather, it is] people's interpretation of the accident produced by the conduct" which communicates an idea. Kate Silbaugh, *Sticks and Stones Can Break My Name: Nondefamatory Negligent Injury to Reputation*, 59 U. CHI. L. REV. 865 (1992). A claim for defamation based upon such a scenario does "not demonstrate publication in the traditional sense," and yet, as noted above, "many courts hold that [claims for 'stand alone' injuries to reputation, where plaintiffs suffer no physical injury to their person or property] implicate defamation law." Travis M. Wheeler, *Negligent Injury to Reputation: Defamation Priority and the Economic Loss Rule*, 48 ARIZ L. REV. 1103 (2006).

defamation and are therefore untimely under the statute of limitations.

WHEREFORE, after careful consideration of the parties' submissions and the applicable law, it is hereby

ORDERED, that Sensis' motion for judgment on the pleadings (Dkt. No. 22) pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is GRANTED and SmithAir's and Appleton's claims are DISMISSED in their entirety as against Sensis.

IT IS SO ORDERED.

Dated: September 30, 2007
Syracuse, New York

Norman A. Mordue
Chief United States District Court Judge

